RUTLAND TRUST COMPANY v. SHELDON & SONS AND OTHERS.

[IN CHANCERY.]

*Trust.  Trustee, Judgment of, as to Exercise of Power.*

The orator was a trustee under a mortgage deed of marble quarries, mills, &c., executed by the defendant S. to secure his bonds. There was a provision in the deed by which the mortgagor could sell any portion of the premises, and the orator quit claim the portion so sold, provided the full value thereof was used in purchasing or retiring the bonds, and the remainder of the bonds "shall

Trust Co. *v.* Sheldon.

not, *in the judgment of the trustee*, become impaired." S. having sold a por-
tion of the premises, and some of the bondholders objecting to a conveyance,
the orator brought this bill for advice "as to whether or not the occasion is a
proper one for the exercise of the power * * * and if so, upon what terms
and provisions," etc. On the findings of the master, that the sale was for full
value. that the purchase money had been applied to retiring the bonds, and that
the security for the remainder had not been lessened, the court below decreed a
conveyance, "unless the said trustee * * * shall decide that the security
for the remainder of said bonds will become impaired," etc.; *Held*, error, in
that the trustee was virtually decreed to convey without any exercise of its
judgment; and the decree went beyond the prayer of the bill.

BILL IN CHANCERY. Heard on bill, answers, replication,
and special master's report, March Term, 1886, VEAZEY,
Chancellor.

Decree: " Upon consideration of the same it is adjudged
that the report of said special master be accepted and con-
firmed; and that the contingency has arisen provided in said
mortgage when it is necessary and expedient for the purpose
of the business of said firm of Sheldon & Sons, to sell and dis-
pose of the portion of said mortgaged premises described in
said bill of complaint; and that the price of the same therein
named is the full value of the same, and that by such sale with
payments of the proceeds in retirement of an equal amount of
the mortgage bonds and cancellation thereof, the security for
the remainder of said bonds will not become impaired or re-
duced; and that the occasion is a proper one for the exercise
of the power conferred upon said Trust Company as trustee, to
sell and convey said one hundreed feet strip of said premises
and apply the proceeds, and that said trustee has in its discre-
tion a legal right so to do, all as provided in said mortgage
deed.

" And it is further adjudged and decreed that said trustee
convey by quit-claim to said S. W. Rowell the said one hun-
hundred feet strip described in said bill of complaint for the
price therein named, upon surrender and cancellation of an
equal amount of said mortgage bonds, all in strict conformity
to the provisions of said mortgage deed; unless the said
trustee, by its board of directors or trustees, shall decide that
the security for the remainder of said bonds will become im-
paired or reduced thereby, and that the occasion has not arisen
when it is necessary or expedient for the purpose of the busi-
ness of the said firm of Sheldon & Sons to make said sale."

The master found that Sheldon & Sons, on the 1st day of

December, 1883, executed a mortgage to the orator, as security for the holders of the bonds therein mentioned, to the amount of $350,000, a large quantity of real estate, consisting of about 130 acres of land in Rutland, upon which are situated the marble quarries, yards, mills, shops, etc. Said bonds, so far as issued, are held by various persons and corporations within and without this State. Said $350,000 of bonds intended to be secured by said mortgage, are payable in instalments of $10,000 each. * * * That the mortgage contains the following provision :

" And in case the parties of the first part (Sheldon & Sons) shall at any time find it necessary or expedient, for the purpose of the business of said firm, to sell and dispose of any portion of said mortgaged premises, said trustee, its successor or successors, are authorized and empowered to release and quit-claim the same to the purchasers thereof from the parties of the first part free and discharged from any lien or charge hereby created, provided the full value of the parcel or parcels so sold shall be used in purchasing or retiring bonds hereby authorized and heretofore issued, and provided that by such sale and payment the security for the remainder of such bonds shall not, in the judgment of said trustee, become impaired or reduced.'

" I also find that the value of the property remaining after deeding of said strip, is not less than from $525,000 to $550,000, and that the security of the $270,000 of bonds remaining unpaid after the cancellation of the $80,000 surrendered in payment as aforesaid, will not be diminished and impaired by releasing the mortgage upon the strip which Sheldon & Sons have deeded to said Rowell ; that in fact the security of the bondholders who hold the remainder of the bonds embraced in said mortgage will be increased rather than lessened thereby. * * * Frederick Chaffee and Thomas J. Lyon, two of said defendants, and bonholders, are proper persons to represent, in this proceeding, the class of bondholders under the said mortgage of Sheldon & Sons to said Rutland Trust Company, trustee. And inasmuch as the interest of said Chaffee and Lyon in this proceeding are identical with the interest of all other bondholders under said mortgage, the interest of all said bondholders under said mortgage are fairly represented in this proceeding by said Chaffee and Lyon."

*Edward Dana*, for Chaffee and Lyon.

These defendants do not complain because the Trust Company has applied to the Court of Chancery for advice and direction. The power conferred is a discretionary one. 2 Perry Trusts, s. 507.

The decree of the court below not only adjudged the occasion was proper for the exercise of the discretionary power, but that the price of the parcel is its full value. The court also adjudged that the security for the remainder of the bonds would not become impaired or reduced by such sale and payment, etc., thereby deciding a matter which it is solely the province of the trustee in its judgment to determine before it has any authority under the mortgage to quit-claim. 2 Perry Trusts, s. 510.

The power, if exercised at all, must be exercised as provided in the mortgage. If the court has power to exercise this discretion, or to compel the trustee to quit-claim, it should follow the directions of the mortgage and decree that the trustee shall convey if it does decide. It should not compel the trustee to quit-claim if it does not decide. 2 Wash. R. P. 318; *Hawkins* v. *Kemp*, 3 East, 415, 430.

This negative decree takes away all discretion on the part of the trustee and makes it a mere tool. The trustee has not refused to act. It is not interested in the result. There is no finding that it is incompetent to act.

In the absence of such findings and facts, the court has no authority to order the execution of any power even though coupled with an interest or trust. 2 Perry Trusts, s. 473; *Eldredge* v. *Heard*, 106 Mass. 579; *Keates* v. *Burton*, 14 Ves. 437; *Hawley* v. *James*, 5 Paige, 455; *Shelton* v. *Homer*, 5 Met. 462: *Ferre* v. *American Board*, 53 Vt. 172.

*Walker & Swinington*, for the petitioner.

There can be no question but that a trustee is entitled to come to the court for the purpose of obtaining its assistance and protection. Bish. Eq. s. 147; Hill Tr. s. 543; 2 Story

Eq. ss. 960, 1267; Adams Eq. s. 59; *Wheeler* v. *Perry*, 18 N. H. 307.

The only question is as to the form of the order. The decree in question was carefully drawn, after much consideration by the chancellor, and is very guarded in its terms. It does not supercede the discretion of the trustee, but is in form a judgment. Anything less would be meaningless and absurd.

The trustee is entitled to protection. This must be given in such form that hereafter it may assert the record as an estoppel. This can only be done by an affirmative judgment.

This is not a mere naked power with nothing more, but is a power coupled with an interest. It is therefore to be distinguished from those cases where a bare power alone is involved. 2 Perry Trusts, 508, 602; Hill Tr. 489, 494; Tif. & Bul. Tr. 738; 2 Jones Mort. s. 1770.

*Wm. H. Smith,* for Sheldon & Sons.

The opinion of the court was delivered by

Ross, J.—The orator is trustee in a mortgage deed executed by Sheldon & Sons to it to secure the payment of their notes or bonds to the amount of $350,000. There is a provision in the deed by which the mortgagor has the right to sell and dispose of any portion of the mortgaged premises, and by which the orator is authorized to release and quit-claim the portion sold, " provided the full value of the parcel or parcels so sold shall be used in purchasing or retiring bonds hereby authorized and heretofore issued, and provided that by such sale and payment the security for the remainder of such bonds shall not, *in the judgment of said trustee*, became impaired or reduced." Sheldon & Sons made a sale of a portion of the mortgaged premises, and some of the bondholders objected to a conveyance by the orator. The orator being in doubt whether a proper occasion had arisen for the exercise of the power of conveyance given in the deed, brought this bill against Sheldon & Sons and the bondholders, praying to have the matter investi-

gated, and for advice "as to whether or not the occasion is a proper one for the exercise of the power conferred by said provision of said mortgage deed, and if so, upon what terms and provisions, if any, to the end that said matter may be for ever set at rest, and all bondholders under said mortgage be concluded from hereafter calling the same in question, and for such other or different order or relief as may be just." The master has found that the sale was for full value ; that the purchase money has been wholly applied to retiring the bonds secured ; and that the security for the payment of the unretired bonds has not been lessened, or will not be by the conveyance. On these facts it is not contended by the bondholders but that a proper occasion for the exercise of the judgment of the trustee, in accordance with the provisions of the deed, has arisen ; but they contend that the decree of the Court of Chancery went too far, in that it decreed that the orator should make the conveyance, "unless the said trustee, by its board of directors or trustees shall decide that the security for the remainder of said bonds will become impaired or reduced thereby, and that the occasion has not arisen when it is necessary or expedient for the purpose of the business of said firm of Sheldon & Sons to make said sale." We think that this contention must be sustained.

This portion of the decree virtually decrees that the orator shall make the conveyance without any exercise of its judgment in the premises ; because it is to convey if it does not exercise its judgment to the contrary. By the deed, all parties thereto contracted for the exercise of the trustee's judgment when a proper occasion should arise, and agreed, impliedly at least, to be bound in the premises by the exercise of that judgment when made impartially and in good faith.

It is not the province of the court of equity to make, or vary, the contracts of the parties, but to enforce them as made. It is no ground of objection that the orator is a corporation, and has no individual judgment, and only the aggregate or average judgment of its directors or trustees. It was for the

honest, impartial exercise of such judgment as in law it had that the parties contracted. There is no suggestion in the bill, or facts reported, that any of its directors or trustees are owners of the unretired bonds, and so have become disqualified to act, by reason of an adverse interest. Besides, this clause of the decreetal order goes beyond the prayer of the bill. It is contended that a decree, in the form rendered, is necessary to set the matter for ever at rest, and conclude the bondholders. Such a decree no more concludes the bondholders than the *bona fide* impartial judgment of the orator, by which the bondholders have impliedly agreed to be concluded. By coming to the court of equity for advice and direction, the orator has, in effect, expressed its willingness and readiness to follow the advice and obey the direction of that court in the premises, or to execute the trust imposed by the deed in accordance with such advice and direction. Hence, the case does not involve the consideration of what the right and power of the Court of Chancery might be if the orator had declined to execute the trust, or if it had been shown that a majority of its directors or trustees had become disqualified by having become interested in the bonds, and Sheldon & Sons, or the purchaser from them, had brought a bill to compel the orator to make conveyance.

The decree of the Court of Chancery is reversed, and cause remanded with a mandate in accordance with these views.